WALLACE v. STATE.*

(In Banc. June 7, 1926. Suggestion of Error Overruled June 21, 1926.)

[108 So. 810. No. 25567.]

1. CRIMINAL LAW.

Finding of jury on question of sanity, on conflicting evidence, will not be reversed.

2. HOMICIDE.

Where defense, in murder prosecution, was insanity at time of killing, testimony with reference to information obtained from

defendant by officers immediately following arrest was admissible.

*Corpus Juris-Cyc References: Criminal Law, 17CJ, p. 264, n. 89; Homicide, 30CJ, p. 212, n. 24; p. 222, n. 38.

APPEAL from circuit court of Marion county.

HON. J. Q. LANGSTON, Judge.

Jeff Wallace was convicted of murder, and he appeals. Affirmed.

*H. B. Leach* and *Broom & Gober*, for appellant:

I.  A change of venue should have been granted. A special term of court was called to consider this case. This is significant in view of the fact that mobs had assembled and great fear was felt for the safety of the prisoner. So much so that the sheriff deemed is advisable to transfer him first to Poplarville, and later to Jackson. The sheriff deemed this necessary to save him from mob violence. It is manifest from the entire record that this special term of court was called as a compromise to appease the wrath of the assembled mob.

We confidently assert without fear of contradiction by the record that not one man in the entire county who was mentally competent to sit on the jury could be found who had not heard this case discussed, and who had not formed or expressed an opinion with reference to it. Many of the witnesses testified that they knew the sentiment of the people, and that the case had been prejudged against the defendant. Other witnesses testified that it was impossible to procure witnesses to take the stand and testify to the real sentiment which prevailed and this reluctance on the part of the people who refused to testify was due to fear, and they requested that they be not required to testify.

The general rule is that the right to a change of venue is a matter submitted to the sound discretion of the trial court; and when it appears that there has been no abuse

of the discretion, its action in refusing to grant a change of venue will not be disturbed. It would be impossible to lay down any fixed rule that would cover all cases with reference to a change of venue. This court is repeatedly called upon to say under the facts in a case that it was or was not grounds for a change of venue. We will cite a few cases where a change of venue was authorized. See *Stafford* v. *State,* 76 Miss. 258, 24 So. 314; *Tennison* v. *State,* 79 Miss. 708, 31 So. 421; *Brown* v. *State,* 83 Miss. 645, 36 So. 73; *Anderson* v. *State,* 92 Miss. 656, 46 So. 65; *Keeton* v. *State,* 96 So. 179, 132 Miss. 732.

When the court has read the record in this case and when they consider the great excitement that prevailed there; when they have read newspaper reports that must have inflamed the public mind there; when this court has observed the necessity for transferring the appellant first to Poplarville and later to Jackson, because of threatened mob violence; when the court considers that three hundred forty-eight men, three special venires, and two regular panels were exhausted in an effort to procure a jury; when it considers further that every peremptory challenge of the defendant had been exhausted; and when this court has examined carefully the testimony of every witness with reference to a proposed change of venue, we believe that this court will then say that, under these facts, it was error to refuse a change of venue.

II. The correct rule with reference to a plea of insanity is stated in *Smith* v. *State,* 95 Miss. 786, 49 So. 945. The best proof or the most competent evidence that could be offered on this question was that given by his son, his son-in-law, and by some other close friends who had known the defendant for many years. All of these witnesses testified that the appellant was insane, and had been insane for some time, and they related instances and circumstances upon which they based their belief and their statement.

Then it will be observed that experts were present and heard the entire testimony of the witnesses and gave it as their opinion that the appellant was insane at the time the act was committed and gave reasons for his opinion.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

I. *The motion for change of venue was properly overruled.* On the hearing of this motion the state introduced twenty-six witnesses. These witnesses were scattered all over the county, almost every community in the county was represented by one or more witnesses. They came from all walks of life, some farmers, some doctors, some lawyers, etc. They testified that they had lived in Marion county for a number of years and most of them were well acquainted with the people in the county or at least with the people in their immediate community, and each and every one of them testified positively and unequivocally that the appellant could get a fair trial in Marion county and that a fair and impartial jury could be had to try him.

It appears that the district attorney used six peremptory challenges; that the attorney for appellant used twelve peremptory challenges when nine jurors had been obtained; that the defense did not object to any juror selected after that time; and that there was no challenge for cause. In other words, even though taking the statement of counsel in this case as the facts, it appears from the record that no man on the jury which tried this appellant was objected to, excepted to, or challenged for cause by the attorneys for the defendant.

The discretion of the trial judge in overruling the motion for a change of venue will not be disturbed unless a gross abuse of it is clearly shown: *Weeks* v. *State,* 31 Miss. 490; *Mash* v. *State,* 32 Miss. 405; *Stewart* v. *State,*

50 Miss. 582; *Cavanaugh* v. *State,* 56 Miss. 299; *Dillard* v. *State,* 58 Miss. 368; *Bishop* v. *State,* 62 Miss. 289; *Regan* v. *State,* 87 Miss. 422; *Long* v. *State,* 133 Miss. 33; *Bond* v. *State,* 91 So. 461; *Mackie* v. *State,* 138 Miss. 740.

In the case at bar thirty witnesses testified that defendant could obtain a fair and impartial trial; one testified that he did not know whether he could or not; one, a son-in-law of the defendant, testified that he could not obtain a fair and impartial trial. We submit that the proof overwhelmingly shows that the motion for a change of venue was properly overruled.

II. *The testimony in the case established the fact beyond all reasonable doubt that the appellant was sane at the time the crime was committed.* The state introduced twenty-five witnesses who testified with reference to the sanity of the defendant. These witnesses were neighbors, friends, and acquaintances of the defendant. They testified that they had known him from two to forty years. A great many of them had been intimately associated with him in social and business ways; and each and every one of them testified positively that they had never seen Mr. Wallace do any act or speak any word that would in any way indicate to them that he was not sane and normal in every respect.

It seems that from the facts the defendant knew that he had committed a crime; that he knew he was liable to be punished therefor; that he tried to establish a defense; that he explained away every circumstance that incriminated or tended to incriminate him. I submit that this testimony is most positive in showing that this appellant was entirely sane at the time he committed this crime.

The theory of the state in the trial of the cause was that the appellant had been drinking intoxicating liquor, that he himself had manufactured or that he had forced his wife and twelve-year-old son to manufacture; that the twelve-year-old boy testified that his father was

drinking white lightning before he went to school; and Albert Knight testified that Mr. Wallace was drinking the afternoon of the tragedy.

The testimony for the state shows beyond all reasonable doubt that the defendant was sane at the time this crime was committed; that the testimony for the defendant does not even raise a suspicion that he was insane; that the horribleness of the crime is accounted for by reason of the fact that the defendant was partly intoxicated on home brew whiskey at the time of its commission.

The judgment of the trial court should be affirmed.

*H. B. Leach,* in reply, for appellant.

I. *Change of venue.* The gist of what each witness testified to is that they believed that appellant could get a fair and impartial trial in Marion county, because Marion county had as good a citizenship as any other county in the state. In other words, they based their opinion as to appellant's ability to obtain a fair and impartial trial, not upon their knowledge or information of the attitude of the general public toward the appellant, but entirely upon their belief in the *honesty and integrity of the citizenship of Marion county.* As we understand the law, the criterion by which the attitude of the public mind in any given case is determined is not whether they are good or bad citizens, as all men are presumed by the law to be good and honest until otherwise proved; but whether or not the *purported facts in the case in question have been communicated to the general public to such an extent that the people have made up their minds as to the guilt or innocence of the accused.*

If this rule is right and is to be followed in this case, then, as we see it, there can be but one conclusion reached, *that appellant was entitled to a change of venue.* In this connection we refer the court to *Owens* v. *State,*

82 Miss. 31, 33 So. 722; *Dillard* v. *State,* 58 Miss. 368; *Stafford* v. *State,* 76 Miss. 258, 24 So. 314; *Tennison* v. *State,* 79 Miss. 708, 31 So. 421; *Brown* v. *State,* 92 Miss. 36 So. 73; *Anderson* v. *State,* 46 So. 65.

From the time the selection of the jury began until the last one had been qualified, which comprised several days, the jurors that were accepted were under one continuous environment of sentiment against appellant. When the door was opened and they marched into the court room every morning of the long drawn out trial, they beheld one solid mass of humanity packed and jammed into the court room until it was literally filled to its utmost capacity right up to the jury box. Throughout the entire trial and at every stage of it, this condition prevailed. Not only that, but at intervals throughout the trial this vast audience made its sentiment plainly known to the jury by hissing counsel for defendant when a witness for the state would hit back under cross-examination. Likewise they would stamp their feet, laugh, clap their hands and in such plain and unmistakable fashion make known to the jury and to every one else present their sentiment against appellant. The trial judge would order the bar cleared from time to time when it would become unbearable, and threaten to clear the court room and several times threatened to put them in jail if they did not refrain from their demonstrations, even going so far on one occasion as to rise in his stand and tell them that a man was on trial for his life; that it was a serious thing; that it was no picture show and would not be tolerated. In the light of the record, we insist that appellant was entitled to a change of venue.

II. *The insanity of appellant.* In substantiation of our contention that appellant was insane at the time of the commission of the crime; that he did not appreciate the natural and probable consequences of his act; and that he could not, with a diseased mind, refrain from the act, we refer to the following decisions of this court,

upon which we rely: *Wood* v. *State,* 58 Miss. 741; *Reed* v. *State,* 62 Miss. 405; *Bacot* v. *State,* 96 Miss. 125, 50 So. 500; *Bishop* v. *State,* 96 Miss. 846, 52 So. 21; *Caleb* v. *State,* 39 Miss. 721; *Russell* v. *State,* 53 Miss. 367.

III. *Inadmissibility of evidence of officers' testimony obtained from appellant in jail.* Appellant was taken from the scene of the tragedy and lodged in jail about midnight of the day of the crime. The next morning the district attorney, in company with the sheriff of the county, his deputies, a doctor and perhaps others, went into the jail and by the shrewd and well known process so well known and used by prosecutors of long years of hardening experiences, they obtained from appellant certain statements relative to the crime which went to the very heart of the case with the jury.

This testimony was plainly inadmissible and as it was highly prejudicial and injurious to appellant with the jury, it constitutes reversible error.

Argued orally by *S. C. Broom,* for appellant, and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

HOLDEN, J., delivered the opinion of the court.

Jeff Wallace appeals from a conviction on a charge of murdering his wife, and a sentence to death.

We have read the evidence in the record, and have carefully considered the arguments of counsel for the appellant, and we are unable to find any reversible error in the case. The two principal grounds urged for reversal are, namely, that the court erred in refusing the change of venue asked by appellant, and that the testimony in the case shows conclusively that appellant was insane at the time of the commission of the deed.

We have thoroughly reviewed the propositions presented, and find that the testimony, as disclosed by the record, reasonably justified the trial judge in refusing

the change of venue. It appears the judge was very careful in his endeavor to select a fair and impartial jury. He exhausted more than three hundred names before finally obtaining a jury which qualified as being fair and impartial and willing and capable of giving the defendant a fair and impartial trial. The testimony, which went to show that the public mind was so prejudiced that a fair trial could not be obtained in Marion county, was not strong proof at best, and was contradicted by credible testimony, which the judge acted upon in overruling the motion for the change of venue.

As to the point that the testimony is conclusive, or overwhelming, that the appellant was insane at the time of the killing, we are unable to agree with counsel for appellant, because the testimony introduced by appellant to show insanity was contradicted and refuted by an abundance of credible testimony, and the question of insanity was a disputed fact which the jury determined against insanity. Therefore we see no reason for reversing the finding of the jury on this issue.

It is also contended that certain testimony with reference to information obtained from appellant by the officers immediately following his arrest should not have been admitted. We have examined this question and we see no merit in the contention. It must not be overlooked that the defense in this case was none other than insanity at the time of the killing, and all testimony pertaining to that issue was admissible.

Taking the record as a whole, we are convinced the appellant received a fair and impartial trial, and that the jury was well within its province in finding him guilty and assessing the death penalty.

Therefore the judgment of the lower court is affirmed and Friday, July 16, 1926, is set for the day of execution.

*Affirmed.*